**ALD-218**                                                                                      **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1357
_____

MICHAEL WALKER; MAURICE PEARSON

v.

JOHN E. WETZEL, Secretary of Corrections; KEVIN KAUFFMAN, Superintendent,
SCI Huntingdon; J. KOHLER, Deputy Superintendent of Facilities Services, SCI
Huntingdon; S. WALTERS, Deputy Superintendent of Centralized Services, SCI
Huntingdon; JILL SPYLHER, Deputy Superintendent of Centralized Services, SCI
Huntingdon; PAULA PRICE, Health Care Administrator, SCI Huntingdon; A. SCALIA,
Institution Safety Manager, SCI Huntingdon; G. POWELL, Facility Maintenance
Manager #1, SCI Huntingdon; MR. HOUP, Laundry Department Supervisor, SCI
Huntingdon; W. HOUSE, Major of the Guards; C. LOY, Major of Unit Management;
GEORGE RALSTON, Unit Manager; M. YOST, Unit Manager

Michael Walker,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:20-cv-01608)
District Judge:  Honorable Robert D. Mariani

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 11, 2022

Before: JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 8, 2022)

---

OPINION[*]

---

PER CURIAM

Michael Walker, proceeding pro se, appeals an order of the United States District Court for the Middle District of Pennsylvania dismissing his civil rights action. For the following reasons, we will affirm the judgment of the District Court.

Walker is incarcerated at SCI-Huntingdon in Pennsylvania. In September 2020, he filed a complaint[1] against the Pennsylvania Secretary of Corrections and various other correctional officials and employees arising from his conditions of confinement and medical treatment during the COVID-19 pandemic, lodging federal claims pursuant to 42 U.S.C. § 1983 for violations of the Eighth Amendment and state claims for violations of the Pennsylvania Constitution. After the defendants moved to dismiss, the District Court granted Walker leave to file an amended complaint, which he did in April 2021.

The amended complaint alleged that before the pandemic, SCI-Huntingdon was in a state of dilapidation—specifically, poor sanitation in cells and common areas; outdated and malfunctioning ventilation systems; and inadequate medical staff and treatment facilities (including the lack of a dedicated infirmary)—that constituted a substantial risk

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Walker brought this action with a co-plaintiff, but proceeds alone on appeal.

2

to inmates' health and safety which was disregarded by the defendants. Walker claimed that this disregard was exposed by the onset of the pandemic, which, though itself unforeseeable, was predictably exacerbated by the poor conditions within the prison. He also claimed that corrections officials were deliberately indifferent to his specific medical needs by ignoring his requests for treatment when he experienced symptoms of COVID-19 in April and May 2020, during a prison-wide lockdown. He explained that he eventually received treatment in June and was told in July that he had been infected with COVID-19 and had recovered. He claimed that he continued to experience COVID-19-related symptoms thereafter, but conceded that he had been prescribed medication and that x-rays and other testing had not shown lingering damage.

Defendants again moved to dismiss the amended complaint for failure to state a claim for relief. The District Court granted the motion and dismissed the complaint with prejudice, finding that further amendment would be futile. Walker timely appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of the order granting defendants' motion to dismiss is plenary. Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Talley v. Wetzel, 15 F.4th 275, 286 n. 7 (3d Cir. 2021) (cleaned up). We construe Walker's pro se filings liberally. Id. We may summarily affirm if the appeal fails to present a substantial question. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

To state an Eighth Amendment claim, a plaintiff must allege that he was incarcerated under conditions imposing a substantial risk of serious harm, and that the defendant was deliberately indifferent to that risk. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020). Deliberate indifference requires that a defendant knew of and disregarded an excessive risk to inmate health and safety. Farmer, 511 U.S. at 837. Prison officials who knew of a substantial risk of harm are not liable "if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

As noted above, Walker lodged separate claims based on the conditions of confinement at SCI-Huntingdon generally and the response to his medical needs specifically. We agree with the District Court that Walker's complaint failed to state a claim on either ground.

Regarding his first claim about the general conditions at SCI-Huntingdon, Walker's amended complaint relied heavily on written testimony that the Pennsylvania Department of Corrections ("DOC") provided to the Pennsylvania Senate Judiciary Committee on May 20, 2020. See Am. Compl., Exh. A, ECF No. 36 at 38–43; see also Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (explaining that a motion to dismiss is decided based on the four corners of the complaint, exhibits attached thereto, matters of public record, and indisputably authentic documents that the plaintiff's claims rely upon). This testimony detailed the steps that the DOC adopted to mitigate the risk of COVID-19 beginning in February 2020. Am. Compl., Exh. A., ECF No. 36 at 39–41.

Besides the system-wide steps, the DOC also identified SCI-Huntingdon as a "Vulnerable Housing Unit," where the DOC "had concerns about [its] ability to mitigate disease spread due to the facility design." Id. at 41. SCI-Huntingdon's "old design," dating from 1889, "consists of multiple four-tier housing units that have open-bar cell doors[,] and all inmate and employee movement travels through a central hub." Id. at 42. Shortly after SCI-Huntingdon recorded the first positive COVID-19 test result among inmates on April 20, the DOC placed the facility in "enhanced lockdown/quarantine," drastically limiting all movement outside of cells. Id. Because there is no dedicated infirmary at SCI-Huntingdon, the DOC brought in staff from other facilities to help convert available space to isolation and treatment areas for inmates who contracted COVID-19, while sending those inmates who needed "hospital-level care" to local hospitals. Id. Despite all these measures, many inmates and staff at SCI-Huntingdon, including Walker, contracted the virus.

We have recognized that COVID-19 "poses unique risks in population-dense prison facilities." United States v. Raia, 954 F.3d 594, 596 (3d Cir. 2020). The District Court emphasized the system-wide mitigation efforts detailed in the DOC's public news releases and in the written testimony that Walker cited, including suspension of in-person visits, screening of staff for the virus, inmate quarantines and lockdowns, and the provision of masks and cleaning materials. In light of these system-wide measures, the enhanced measures taken in recognition of the unique challenges posed by SCI-Huntingdon's design, and the unprecedented and evolving nature of the pandemic,

5

Walker does not have a plausible claim that prison officials disregarded an excessive risk of harm. Cf. Hope v. Warden York Cnty. Prison, 972 F.3d 310, 330 (3d Cir. 2020) (stating that the "failure to eliminate all risk" of contracting COVID-19 in immigration detention did not establish deliberate indifference); Wilson v. Williams, 961 F.3d 829, 841 (6th Cir. 2020) (holding that the federal Bureau of Prisons was not deliberately indifferent to the risk of harm in light of preventative measures taken in response to COVID-19).

Walker also claimed that officials at SCI-Huntingdon were deliberately indifferent to his specific medical needs. He asserted that during the prison-wide lockdown in April and May 2020, he experienced symptoms of COVID-19. He claimed that he reported these symptoms to "medical staff and officers that were passing through on the housing unit," that "on all occasions he was advise[d] to sign up for a [s]ick-call the next morning," and that he "submitted numerous sick[-]call requests and not one medical staff [came] to attend or treat him" in response to those requests. Am. Compl. 17. He said that he was forced to treat himself by drinking extra water to "flush out his system" and "sleeping it off." Id. He explained that medical staff did eventually treat him beginning in early June and ultimately told him in July that he likely had contracted and recovered from COVID-19. Id. at 18–19. Although he complained of ongoing symptoms, he acknowledged that he was prescribed "countless medications" and that further testing had shown no permanent damage. Id. at 19.

6

We agree with the District Court that Walker's complaint did not state a plausible claim for relief. First, his general statements about "medical staff and officers" did not allege the personal involvement of any of the named defendants in denying or delaying medical treatment in April and May 2020. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988) (explaining that a § 1983 action cannot be premised on a theory of respondeat superior). Second, the allegations in the amended complaint make clear that in June and July 2020, "numerous" medical professionals examined Walker multiple times, prescribed him "countless medications," and determined that he suffered no identifiable damage resulting from his COVID-19 infection. Am. Compl. 18–19, ¶¶ 34–39. While Walker takes issue with the precise treatment and diagnostic regimen prescribed in June and July, "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); see also Pearson, 850 F.3d at 535 (explaining that, when medical care is provided, this Court "presume[s] that the treatment of a prisoner is proper absent evidence that it violates professional standards of care").

Finally, we also agree with the District Court's conclusion that Walker state-law claims fail because Pennsylvania does not recognize a private right of action for damages in a suit alleging a violation of the Pennsylvania Constitution. See, e.g., Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution."). And, because the District Court already granted

7

Walker leave to amend once and further amendment would be futile, declining to grant further leave to amend was proper.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

        Accordingly, we will affirm the judgment of the District Court.